**SO ORDERED.**

**SIGNED this 20 day of December, 2007.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE
_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

In re:  )
 )
BETTY SUE BAILEY,  )  Case No. 04-42258
 )  Chapter 13
 Debtor.  )
_____)

**MEMORANDUM OPINION AND ORDER DENYING MOTION
TO DETERMINE CHILD SUPPORT HAS BEEN PAID
THROUGH CHAPTER 13 PLAN**

This matter is before the Court on Debtor's one page Motion to Determine that Child Support has been Paid Through Chapter 13 Plan.[1] She seeks a determination that her child support obligation to Creditor DynTec has been satisfied by payment of approximately one-half of the child support claim, and that any remaining debt due that creditor will be discharged when she receives her discharge. She does not argue that, on the merits, the debt

_____

[1] Doc. 32.

is dischargeable under applicable bankruptcy law, only that the "discharge by declaration" procedure used in the plan binds the creditor.

Creditor State of Kansas, Secretary of Social and Rehabilitation Services (SRS)[2] filed a lengthy response, arguing both that this debt is not dischargeable because the "discharge by declaration"[3] language in the plan is not binding pursuant to 11 U.S.C. § 1327,[4] but also that on the merits, the underlying debt is a nondischargeable child support obligation. At a hearing held on this matter on November 16, 2007, the parties agreed that there were no issues of fact, and the creditor represented that the brief he had filed in another recent child support case[5] should be used in lieu of a separate brief filed in this case. Debtor waived the right to file a brief in support of her position, so the issue is ripe for decision.

This matter constitutes a core proceeding[6] and this Court has jurisdiction to decide it.[7]

---

[2] DynTec is now called YoungWilliams, and the Secretary of Social and Rehabilitation Services represents that entity. According to SRS, at the time of the claim in question, DynTec was the authorized statutory contractor with the SRS for collection of all child support obligations under the Social Security Act.

[3] The Tenth Circuit noted that the practice of establishing undue hardship simply by submitting language in a proposed Chapter 13 plan is known as "discharge-by-declaration" because the debtor is not required to prove undue hardship in an adversary proceeding as required by Federal Rule of Bankruptcy Procedure 7001(6). *In re Mersmann*, 505 F.3d 1033, 1038 (10th Cir. 2007).

[4] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references to the Bankruptcy Code are thus to 11 U.S.C.A. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[5] *In re Munck*, Case No. 02-41690, Creditor Brief at Docket 78.

[6] 28 U.S.C. § 157(b)(2)(I) (determination of the dischargeability of particular debts).

[7] 28 U.S.C. § 1334.

## I. FINDINGS OF FACT

In January, 2004, SRS filed a petition in state court seeking reimbursement from Debtor under K.S.A. 39-718b, which essentially holds a parent responsible to repay SRS for assistance the state directly provides to his or her child. In July 2004, judgment was entered against Debtor for $2,394 on that petition. The next month, on August 20, 2004, Debtor filed a voluntary petition for bankruptcy relief under Chapter 13 of the Bankruptcy Code. That same day, she filed her Chapter 13 plan,[8] which contained the following language:

| SPECIAL CLASS: | Amount | To be paid |
|---|---|---|
| Dyntec | $2,394.00 | $1,200.00 |

to be paid hypothetical support in the amount of $1,200.00 balance to be discharged [_____][9]

No objection was filed to confirmation of the plan, an order confirming the plan was entered on November 17, 2004, and no appeal was taken from that order.

On January 21, 2005, Debtor filed Proof of Claim No. 3 on behalf of DynTec, asserting that DynTec was only owed $1,200.00 and that the claim was "a special class claim to be paid hypothetical support in the amount of $1,200.00 balance to be discharged [_____].[10]" Six days later, on January 27, 2005, DynTec filed its own Proof of Claim,[11] within the bar deadline for filing claims, asserting that it was actually owed $2,394.00. The

---

[8]Doc. 3.

[9]The name of the child for whom support was required was included in the plan, but because of privacy provisions, the Court omits that name here.

[10]Again, the child's name was included, but is omitted here.

[11]Claim #4.

3

documentation submitted with the claim clearly shows the debt in question was for the support of Debtor's minor child.

The Trustee objected to the proof of claim filed by Debtor on behalf of DynTec on the basis it was duplicative of the proof of claim filed by DynTec, itself; that objection was sustained without response from Debtor.[12] Debtor never filed an objection to DynTec's claim.

Although Debtor has not yet completed her Chapter 13 plan, and no discharge order has been entered, Debtor has moved for an order holding that once she does complete the plan, she will be discharged from ever repaying the balance of DynTec's claim since she has paid $1,200 of the $2,394 DynTec claim, as provided by her plan. Her motion is based solely on the plan language. The issue before this Court is whether Debtor can discharge a portion of her child support obligation to DynTec by including such a provision in her Chapter 13 plan, notwithstanding the provisions 11 U.S.C. § 523(a)(5).

**II.   ANALYSIS**

The starting point for any analysis of the binding effect of a Chapter 13 plan confirmed before September 24, 2007, is the Tenth Circuit Court of Appeals decision in *In re Andersen v. UNIPAC-NEBHELP (In re Andersen)*.[13] In *Andersen*, the debtor included a provision in her Chapter 13 plan that excepting her student loans from discharge pursuant to

---

[12] Doc. 18.

[13] 179 F.3d 1253 (10th Cir. 1999). *Andersen* was overruled on September 24, 2007 by *In re Mersmann*, 505 F.3d 1033 (10th Cir. 2007), but only prospectively. Because the plan in this case was confirmed long before *Mersmann* was decided, *Andersen* and its progeny are still controlling here.

4

§ 523(a)(8) because repayment of the student loans would create an undue hardship on the debtor and her dependants, that confirmation of the plan would constitute a finding to that effect, and that the student loan debt would be discharged upon completion of the plan. The student loan creditor filed an untimely objection to the plan, which was denied on timeliness grounds, and did not appeal the order of confirmation.

After the debtor received her discharge, the student loan creditor began efforts to collect the student loans in question. The Tenth Circuit Court of Appeals eventually held that the Chapter 13 plan, which clearly indicated that the repayment of the student loans would constitute an undue hardship and would be discharged, was binding on all parties. Thus, the student loan creditor was bound by the plan's terms, and was forever barred from collecting the discharged debt. In so holding the Tenth Circuit stated:

> Moreover, we have recently said that, upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is res judicata and its terms are not subject to collateral attack. We therefore agree with the BAP that the order of confirmation is res judicata as to the issue of hardship. Although the provision at issue did not comply with the Code, it is now too late for ECMC to make the argument that HEAF failed to timely raise. This is especially true where, as here, the plan has been confirmed, no appeal challenging the confirmation order was brought, all payments under the plan have been made, and the order of discharge has been entered. The purpose of section 1327(a) is the same as the purpose served by the general doctrine of res judicata. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order.[14]

---

[14] *Id.* at 1258-59 (internal citations and quotations omitted).

The holding in *Andersen* was then clarified in *Poland v. Educ. Credit Mgmt. Corp. (In re Poland)*.[15]

In *Poland*, the debtor attempted to apply the holding in *Andersen* to her own plan, which included language that simply said if no timely proof of claim was filed by the student loan creditor, "the claim shall be deemed discharged in its entirety upon completion of the Plan."[16] The Tenth Circuit Court of Appeals declined to give preclusive effect to those plan provisions, holding that the student loans had not been excepted from discharge as a result of the entry of the order confirming that plan.[17] The Circuit made it clear in *Poland* that it was the factual determination--- that the student loans would constitute an undue hardship on the debtor--- that was binding upon the parties under *Andersen*, not the blanket statement that the student loans would be discharged.

*Poland* also made it clear that *Andersen* did not stand for the proposition that a Chapter 13 plan could convert a nondischargeable debt into a dischargeable one simply by so stating in the plan. According to *Poland*,

> ... contrary to the creditor's argument, giving res judicata effect to the provision in the plan did not turn an expressly nondischargeable debt into a dischargeable debt. Distinguishing two cases involving discharge of a tax debt, *DePaolo v. United States (In re DePaolo)*, 45 F.3d 373 (10th Cir. 1995), and *Grynberg v. United States (In re Grynberg)*, 986 F.2d 367 (10th Cir. 1993), we explained that *Andersen*:

---

[15]382 F.3d 1185 (10th Cir. 2004).

[16]*Id.* at 1187.

[17]*Id.* at 1189.

6

does not represent an attempt to transform a debt which remained nondischargeable throughout the plan period into a dischargeable debt at the conclusion of the period. Rather, unlike the tax cases, the finding of undue hardship in the confirmed plan changed the nature of the debt into a dischargeable debt.[18]

The Court finds that the analysis and holding in *Poland* control under the facts of this case.

This Court has recently had an opportunity to consider both *Andersen* and *Poland* in the child support context in *In re Munck*.[19] In *Munck*, Debtors included a provision in their Chapter 13 plan that provided for payment of a certain amount of child support arrearage, but further noted that similar debt classified as "reimbursement support" did not fall within the confines of § 523(a)(5) and would therefore be discharged.[20] The Court held in *Munck* that the provisions of that Chapter 13 plan were binding on the child support agency, even under *Poland*, because the confirmation process, coupled with the claims objection process, operated to actually litigate whether the debt in question was dischargeable.[21]

---

[18]*Id* at 1188 (citing *Andersen*, 179 F.3d at 1260).

[19]Case No. 02-41690, Memorandum Opinion and Order Denying Both the Motion to Reopen and Motion for Show Cause Order (Bankr. D. Kan. December 7, 2007).

[20]The plan provision actually provided that the child support arrearage would be paid, and that "all debts denominated as 'reimbursement support'" would be discharged. However, following an objection to the plan by the party claiming entitlement to the reimbursement support, debtors clarified their position by expressly claiming that "reimbursement support" was not governed by § 523(a)(5) because it was not a debt owed to a spouse, former spouse, or child of the debtor. This position was again made manifest by the Muncks' objection to the claim of the agency attempting to collect both its support claim, as well as the support claim of the mother of Mr. Munck's child, thus providing several opportunities to actually litigate the underlying question of whether the debt at issue was, or was not, child support as contemplated by the statute.

[21]The Court noted that it was prevented from deciding whether the debt in question was actually within the scope of § 523(a)(5), because that decision had been made earlier, at the confirmation stage and then again at the claims objection stage, and those earlier decisions were binding on the parties.

7

This is similar to the distinction the Tenth Circuit Court of Appeals made in the student loan context. The Circuit held, in *Andersen*, that because the plan made a factual determination that repayment of a student loan would constitute an undue hardship on the debtor, which in turn made the debt dischargeable, that finding was binding on the parties. Conversely, the Circuit held in *Poland* that a plan that simply declared that a student loan would be discharged, without articulating any factual or legal finding to support such a declaration, was not binding because the only statutorily permissible way to discharge a student loan is after a finding of undue hardship, and that finding had never been made.

The plan provision in this case closely resembles the plan provision in *Poland*, to which the Tenth Circuit refused to accord res judicata effect. Debtor did not, through the provisions of the plan, indicate any legal or factual basis for a finding that her debt to Dyntek fit within some exception to the statute that generally holds child support obligations are nondischargeable. In other words, Debtor did not attempt to frame the debt in a manner that legally or factually took it outside the confines of a § 523(a)(5) debt, as the debtors did in *Munck*.

Debtor's plan also contained no factual finding that could arguably convert an otherwise nondischargeable debt into a dischargeable one, as was the case in *Andersen*. Instead, the plan simply declared the debt would be discharged, without more, just as the debtor did in *Poland*. Because of the distinction that the Tenth Circuit has made, Debtor's plan provision declaring that her debt to DynTec will be discharged after paying only $1,200 of the debt is not binding. The Court thus finds that the remaining child support arrearage

8

has not been, and will not be, discharged by Debtor's payment of $1,200 to Dyntek during her Chapter 13 plan.[22]

### III. CONCLUSION

The Court finds that Debtor's Motion to Determine that Child Support has been Paid Through Chapter 13 Plan should be denied. The provision in Debtor's plan that simply provided for the discharge of a portion of a child support obligation, without any factual or legal basis therefor, is not binding under the Tenth Circuit decision *In re Poland*.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Motion to Determine that Child Support has been Paid Through Chapter 13 Plan is denied.

###

---

[22]This holding does not preclude Debtor from filing a proper adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) (defining a "proceeding to determine the dischargeability of a debt" as an adversary proceeding) to determine the dischargeability of the debt in question. If Debtor truly contends that the debt to DynTec, which by Debtor's own admission is in the nature of child support, is somehow properly dischargeable in this Chapter 13 proceeding, she may litigate that issue. This decision merely holds that confirmation of the Chapter 13 plan, and payment of $1,200, did not render the debt dischargeable.

9